DAVID C. HUNGERFORD (State Bar No. 209609)
dch@severson.com
ELIZABETH A. TRITTIPO (State Bar No. 215622)
eat@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Plaintiff
Certain Underwriters at Lloyd's, London
Subscribing to Policy No. MEO1545358.19

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. MEO1545358.19,<br><br>Plaintiff,<br><br>vs.<br><br>ROUND TRIP TRANSPORTATION, INC., a California corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY RELIEF OR, IN THE ALTERNATIVE, REFORMATION OF INSURANCE POLICY** |

NOW COMES plaintiff Certain Underwriters at Lloyd's, London Subscribing to Policy No. MEO1545358.19 and, for its Complaint against defendant Round Trip Transportation, Inc., alleges as follows:

**PARTIES**

1. Certain Underwriters at Lloyd's, London Subscribing to Policy No. MEO1545358.19 ("Underwriters") is an eligible surplus lines insurer in the State of California. Underwriters writes insurance in the insurance market known as Lloyd's of London, England. Lloyd's Syndicate 3624 is the only subscribing insurer to Policy No. MEO1545358.19. Lloyd's Syndicate 3624 is wholly owned by Hiscox

1

Dedicated Corporate Member, Ltd., which is a corporation registered and domiciled in the United Kingdom. At pertinent times, Underwriters has conducted business in this district.

2. At all times relevant, Round Trip was and is a corporation duly organized and incorporated under the laws of the State of California, with its principal place of business in the County of Los Angeles. At all times herein relevant, a substantial part of the events or omissions giving rise to the claim occurred in this district.

**JURISDICTION AND VENUE**

3. Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. A present and actual controversy exists regarding Underwriters' obligations under Insurance for Allied Healthcare Professionals Policy No. MEO1545358.19 ("the 2019 Policy") issued to Round Trip. A true and correct copy of the 2019 Policy is attached hereto as **Exhibit A**. Underwriters seeks and is entitled to a declaration of the parties' respective rights and duties under the 2019 Policy pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

5. This court has jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 2201.

6. Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(b) in that Defendant is subject to personal jurisdiction in this district at the time the action commenced, the insurance policy at issue was entered into in this district, and a substantial part of the event or omissions giving rise to the claim occurred in this district.

**ROUND TRIP'S PROCUREMENT OF THE INSURANCE POLICIES**

7. Underwriters issued five Insurance for Allied Healthcare Professionals Policies to Round Trip for consecutive annual policy periods of March 10, 2015 to

March 10, 2016, March 10, 2016 to March 10, 2017, March 10, 2017 to March 10, 2018, March 10, 2018 to March 10, 2019, and March 10, 2019 to March 10, 2020 (collectively, the "Policies").

8. On February 18, 2015, Round Trip's wholesale insurance broker, Ryan Stell of Sweet & Crawford, submitted Round Trip's initial insurance application to Underwriters via email. According to Stell's February 18, 2015 email, he stated "[p]lease quote $1M/$3M with your best possible terms and conditions." A copy of Stell's February 18, 2015 email is attached hereto as **Exhibit B**.

9. Attached to Stell's February 18, 2015 email was an Acord Commercial Insurance Application ("Insurance Application") which requested the following healthcare professional liability coverage: $1 million limit of liability each medical incident / $3 million limit of liability in the aggregate / $2,500 deductible. The "Remarks" section in the Insurance Application stated, "ABUSE AND MOLESTATION MUST BE INCLUDED; CONTRACTUAL REQUIREMENT." A copy of Round Trip's Insurance Application is attached hereto as **Exhibit C**.

10. On February 20, 2015, underwriter Hanh Vo emailed an insurance quote ("Initial Quote") to Stell. The Initial Quote included a $300,000 aggregate sublimit of liability for Sexual Abuse/Misconduct Coverage. A copy of a February 2, 2015 – March 2, 2015 email thread between Vo and Stell, including Vo's Initial Quote, is attached hereto as hereto as **Exhibit D**.

11. On March 2, 2015, Stell emailed Vo and said, "[w]e need full limits for Sexual Abuse and Molestation per contract requirements of San Gabriel Pomona Regional Center & Harbor Regional Center. I cannot put my hands on the Harbor Regional contract at this moment but I have it that they DO [stet] require $3,000,000 Agg. Please requote the Sexual Abuse and Molestation with these full limits." *See*, **Exhibit D.**

12. On March 3, 2015, Vo sent a revised insurance quote ("Revised Quote") to Stell via email. Vo's March 3, 2015 email stated, in pertinent part,

3
COMPLAINT FOR DECLARATORY RELIEF, OR IN THE ALTERNATIVE, REFORMATION OF INSURANCE POLICY

"[a]ttached please find my revised terms to reflect the annual revenue as well as the increase in Sex Abuse limits to 1M per claim, 3M aggregate.  Please note that a copy of the contract showing the sex abuse limit requirement in a prior binding to subjectivity."  A copy of Vo's March 3, 2015 email and the Revised Quote is attached hereto as **Exhibit E**.

13. On March 4, 2015, Stell sent an email to Round Trip's broker, Sylvia Nelson with Dougherty Company Insurance Brokers, Inc. which stated, in relevant part, "I got Hiscox to make an exception for me. Enclosed is a quote from Hiscox for your file and review.  Specimen copies of the policy form and endorsements are included with the quote letter.  Please note subjectives outlined in the quote letter."

14. On March 6, 2015, Nelson responded to Stell via email and stated, "[p]lease bind Hiscox as quoted effective 3/10/15."  Later that same day, Stell forwarded Nelson's email and attachments to Hiscox and stated, "See below, please bind!"  A copy of the March 4, 2015 – March 6, 2015 email thread between Stell, Nelson, and Vo is attached hereto as **Exhibit F**.

15. The parties renewed the Policies on an annual basis.  As relevant to the parties' coverage dispute, the Policies provide the same insurance coverage to Round Trip and include the same limits of liability.

## THE 2019 POLICY

16. Underwriters issued the 2019 Policy to Round Trip for the policy period March 10, 2019 to March 10, 2020.  The 2019 Policy's PL Coverage Part provides for limits of liability of $1,000,000 Each Claim and $3,000,000 in the Aggregate.  The PL Coverage Part includes a Sexual Abuse/Misconduct Sublimit that has a $3,000,000 Aggregate limit, which is shared with the PL Coverage Part's $3,000,000 Aggregate limit.  A $2,500 self-insured retention applies to each claim under the PL Coverage Part.

///
///

**THE A.L. ACTION**

17. On or about February 19, 2019, A.L., a mentally disabled adult, by and through her guardian *ad Litem*, Rosalia Amezcua ("A.L"), filed a complaint ("A.L. Complaint") against Round Trip and Ezequiel Ocampo ("Ocampo") in an action captioned *A.L., by and through her Guardian ad Litem, Rosalia Amezcua v. Round Trip Transportation, Inc., et al.*, Los Angeles County Superior Court, Case No. 19STCV05630 ("A.L. Action"). On or about February 18, 2020, A.L. filed a First Amended Complaint ("A.L. FAC") which named Harbor Developmental Disabilities Foundation, Inc., doing business as Harbor Regional Center ("Harbor") as an additional defendant in the A.L. Action. The A.L. FAC is the operative pleading in the A.L. Action. Round Trip, Ocampo, and Harbor are collectively referred to herein as the "A.L. Defendants." A true and correct copy of the A.L. FAC is attached hereto as **Exhibit G**.

18. The A.L. FAC includes the following pertinent allegations:

> On or about May or June 2018 OCAMPO raped and impregnated Plaintiff. OCAMPO pled *nolo contendere* to Penal Code 261(a)(1) and has been sentenced to 6 years in state prison. (A.L. FAC, ¶ 7.)
>
> OCAMPO at all times relevant was an agent, servant, and/or employee of ROUND TRIP and all of the things alleged to have been done by him were done in the capacity of an employee and/or agent of ROUND TRIP and DOES 1 through 100. (A.L. FAC, ¶ 8.)
>
> Plaintiff took a bus, provided by ROUND TRIP, to and from her program Monday through Friday, and OCAMPO was one of her bus drivers. HARBOR contracted with ROUND TRIP for ROUND TRIP to provide bus services for its clients, including Plaintiff. (A.L. FAC, ¶ 9.)
>
> At the time that Plaintiff was sexually assaulted OCAMPO was driving the ROUND TRIP bus as an employee of ROUND TRIP, (A.L. FAC, ¶ 10.)

\*\*\*

19. The A.L. FAC asserts four causes of action: (1) Battery (against all A.L. Defendants, except Harbor); (2) Negligence (against all A.L. Defendants); (3)

Violation of Bane Act – California Civil Code §§ 52.1, 52 (against all A.L. Defendants, except Harbor); and (4) Violation of California Civil Code §§ 51.7, 52 (against all A.L. Defendants, except Harbor).

20. Underwriters first received notice of the A.L. Action on or about June 18, 2019.

21. Underwriters agreed to defend Round Trip in the A.L. Action under the 2019 Policy's PL Coverage Part, subject to a full and complete reservation of rights.

22. Plaintiff in the A.L. Action has demanded amounts in excess of $1,000,000 to settle the A.L. Action.

## FIRST CAUSE OF ACTION

**(Declaratory Judgment that the A.L. Action is Subject to a $1,000,000 Limit of Liability)**

23. For its first cause of action, Underwriters incorporates by reference, as if fully stated, paragraphs 1 to 22 above.

24. The 2019 Policy's Declarations Page lists the following limits of liability regarding the PL Coverage Part:

| Professional Liability (PL) | $1,000,000 Each Claim / $3,000,000 Aggregate |
| --- | --- |
| Defense of Licensing Proceedings | $10,000 Aggregate Limit (Separate Limit) |
| Subpoena Assistance | $10,000 Aggregate Limit (Separate Limit) |
| HIPAA Violations | $250,000 Aggregate Limit (Shared Limit with PL) |
| Sexual Abuse/Misconduct | $3,000,000 Aggregate Limit (Shared Limit with PL) |

25. Section II.B. (Each claim limit) of the 2019 Policy's General Terms and Conditions provides as follows:

> The Each Claim Limit identified in the Declarations is the maximum amount **we** will pay for all **covered amounts** for each covered **claim**, unless a lower sublimit is specified, in which case the sublimit is the maximum **we** will pay for the type of covered **claim** to which the sublimit applies. The Each

6
COMPLAINT FOR DECLARATORY RELIEF, OR IN THE ALTERNATIVE,
REFORMATION OF INSURANCE POLICY

Claim Limit, or any sublimit, will be in excess of any applicable **retention** and will be part of, and not in addition to, any applicable **coverage part limit**.

\*\*\*

26. Section II.D. (Sexual abuse/molestation sublimit) of the 2019 Policy's PL Coverage Part provides the following:

> **We** will pay **damages** and **claim expenses** up to the limit stated in the Declarations for any **claim** against **you** alleging sexual misconduct, sexual abuse, physical abuse, or child abuse, provided the **claim** is first made against **you** during the **policy period**, it arises from **your professional services** performed on or after the **retroactive date**, and it is reported to **us** in accordance with Section V. Your obligations.
>
> **You** must pay the **retention** stated in the Declarations in connection with any payment **we** make under this subsection D, and any payments **we** make will be part of, and not in addition to, the **coverage part limit**.

\*\*\*

27. Section VII. of the 2019 Policy's PL Coverage Part lists the following relevant definitions:

> **Claim** means any written assertion of liability or any written demand for financial compensation or nonmonetary relief.

\*\*\*

> **Professional services** means only those services identified as Covered Professional Services under the Allied Healthcare Professional Liability Coverage Part section of the Declarations [Solely in the performance of non-emergency medical transport services.]

\*\*\*

> **You**, **you**, or **insured** means **named insured**, **employee**, **independent contractor**, **student**, or **medical director** as defined in Section III. Who is an insured.

\*\*\*

28. An actual controversy has arisen and now exists between Underwriters and Round Trip regarding their respective rights and duties under the 2019 Policy concerning the A.L. Action. Underwriters contends that coverage under the 2019

7

Policy for the A.L. Action is subject to a $1,000,000 limit of liability. On information and belief, Round Trip contends that coverage under the 2019 Policy for the A.L. Action is subject to a $3,000,000 limit of liability.

29. Underwriters desires a judicial determination of its rights and duties, and a judicial declaration that coverage under the 2019 Policy for the A.L. Action is subject to a $1,000,000 limit of liability.

30. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Such controversy is incapable of resolution without judicial adjudication. Accordingly, Underwriters has no plain or speedy or adequate remedy at law, and requests declaratory judgment, adjudicating and declaring that coverage under the 2019 Policy for the A.L. Action is subject a $1,000,000 limit of liability.

## SECOND CAUSE OF ACTION
### (Reformation of 2019 Policy)

31. For its second cause of action, Underwriters incorporates by reference, as if fully stated, paragraphs 1 to 30 above.

32. If this court concludes that the 2019 Policy's plain language does not provide that the A.L. Action is subject to a $1,000,000 limit of liability, then, in the alternative, Underwriters is entitled to reformation of the 2019 Policy based on the facts surrounding the parties' negotiation and placement of the Policies, including the 2019 Policy.

33. Both Underwriters and Round Trip intended to enter into a contract whereby the 2019 Policy's Sexual Abuse/Misconduct Sublimit would be subject to limits of liability of $1,000,000 per claim and $3,000,000 in the aggregate.

34. Based on the foregoing, Underwriters is entitled to reformation of the contract between Underwriters and Round Trip to reflect that the 2019 Policy's Sexual Abuse/Misconduct Sublimit is subject to limits of liability of $1,000,000 per claim and $3,000,000 in the aggregate, which was the true intention of the parties.

8
COMPLAINT FOR DECLARATORY RELIEF, OR IN THE ALTERNATIVE,
REFORMATION OF INSURANCE POLICY

## PRAYER FOR RELIEF

WHEREFORE, Underwriters prays for relief as follows:

1. For a judgment declaring that coverage under the 2019 Policy for the A.L. Action is subject a $1,000,000 limit of liability.

2. If the 2019 Policy's plain language does not provide that the A.L. Action is subject to a $1,000,000 limit of liability, then for a judgment reforming the 2019 Policy to expressly provide that the Sexual Abuse/Misconduct Sublimit is subject to limits of liability of $1,000,000 per claim and $3,000,000 in the aggregate, and declaring that the A.L. Action is subject to a $1,000,000 limit of liability.

3. On all causes of action, for costs herein.

4. For such other and further relief as the court deems to be just and proper.

DATED: April 2, 2021      SEVERSON & WERSON
                          A Professional Corporation


                    By:    /s/ David G. Hungerford
                          DAVID G. HUNGERFORD
                          ELIZABETH A. TRITTIPO

                          Attorneys for Plaintiff Certain Underwriters at
                          Lloyd's, London Subscribing to Policy No.
                          MEO1545358.19